## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**ERNEST R. DVORAK**                                              **PLAINTIFF**

**VS.**                       **No. 4:22-cv-00412 BRW/ PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                        **DEFENDANT**

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Ernest R. Dvorak ("Dvorak") appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny

his claim for Disability Insurance Benefits ("DIB"). Dvorak claims that the Administrative Law Judge ("ALJ") erred: (1) by failing to fully and fairly develop the record; (2) at Step Two of his sequential evaluation in his severity analysis; (3) by erroneously assessing Dvorak's residual functional capacity ("RFC"); and (4) by relying upon the vocational expert's testimony. The parties have ably summarized the testimony from the February 20, 2020, administrative hearing, and a supplemental telephonic hearing conducted on March 11, 2021.[1] The relevant period under consideration is from May 19, 2017, the alleged onset date, through July 14, 2021, the date of the ALJ's decision. The Court has carefully reviewed the record, including the medical records, and finds merit in the third argument raised by Dvorak. Specifically, the ALJ erred in his consideration of the opinion evidence of treating physician Samuel Burns ("Burns") as part of the RFC assessment. As a result, the Court recommends that the decision of Kijakazi be reversed and the case remanded.

*Dvorak's Allegations and Relevant Testimony*

Dvorak alleged he was disabled due to serotonin syndrome, tremors, neurological issues, degenerative disc disease, deterioration in the left elbow joint, diminished grip in the right hand, high blood pressure, migraine headaches, and

---

[1] No decision was issued in the year following the first administrative hearing on February 20, 2020. The case was reassigned to another ALJ who conducted the supplemental hearing in March 2021 and issued his decision in July 2021.

depression.

Dvorak was 54 years old as of the alleged onset date, with a college degree in mechanical engineering which was earned despite completion of only the tenth grade. He weighed 350 pounds at the second administrative hearing in March 2021.[2] Dvorak testified to twelve impairments hindering work, including seizures, tremors, cluster headaches, and depression. He stated he used a cane for a few years before changing to a walker which he used on a daily basis. Both of these devices were prescribed for him, according to Dvorak. The seizures, he said, were triggered by extreme heat or cold, or stress. The tremors dated back to an episode in May 2017 resulting in hospitalization for multiple days. Dvorak described "different iterations of medication to get this under control, and it's still not totally under control at this point." (Tr. 55). The cluster headaches, which could be triggered by exposure to perfumes or detergents, occurred on a monthly basis and "lasts for days." (Tr. 63). Dvorak uses Imitrex to treat the headaches if "I catch it early enough." (Tr. 63). Dvorak's depression included hospitalization, and he stated he continues to have suicidal ideation. At the March 2020 hearing, Dvorak reported he was receiving regular counseling and had recently changed medications, which seemed to "help some." (Tr. 96). Nevertheless, he thought about suicide "nearly daily." (Tr. 96).

---

[2] Dvorak testified he was 5'9", 310 pounds at the February 2020 hearing. (Tr. 53).

*The ALJ's Decision, in pertinent part*

The ALJ determined Dvorak had the following severe impairments: lumbar strain, obesity, headaches, tremors, unspecified mood disorder, adjustment disorder with severe depressed mood, anxiety, obsessive compulsive disorder, and hearing loss. The ALJ further found Dvorak to have the RFC to perform medium work with the following restrictions: cannot engage in work requiring excellent bilateral hearing; avoid exposure to dangerous machinery and unprotected heights; limited to work where interpersonal contact is incidental, tasks are no more complex than those learned and performed by rote with few variables and little judgment, and supervision required is simple, direct, and concrete.

The ALJ summarized Burns' treatment:

The claimant switched providers to Dr. Samuel Burns in the fall of 2019. He was using over the counter medications for headache stating sumatriptan messed with his stomach. He was having headaches several times a month and stated he has [sic] under a lot of stress. He cited headaches with blackouts twice in the last 2 years attributing them to serotonin syndrome. He cited mental treatment in June of 2018 for ideation and physical therapy with injections and effective use of a TENS unit. He was taking Lamictal. The claimant was normal on exam showing no tenderness, loss of motion and a normal gait. Strength and coordination were intact. Normal mental attention and concentration were normal, but he was anxious. Lamotrigine was prescribed for depression.
He continued seeing Dr. Burns for headache, right hip, and low back pain. He was prescribed a cane and physical therapy. Joseph Bridges PT, noted pain with exercises but overall improved stability. He referenced a grade 1 slip in right hip as child and the claimant stated he

always had trouble. However, he had been less active than he had in the past citing seizure activity and pain. He stated seizures occurred with fatigue, stress, heat and weather. There is some evidence of arthritis on x-ray but the claimant had not seen an orthopedist. He cited pain that interfered with sleep, activity. He said he could not stand more than a few minutes or assist with chores. He was using cane in his right hand because his left elbow could not handle the weight. He asked for a quad cane. Dr. Burns also prescribed propranolol, venlafaxine for mood, meloxicam for pain and sumatriptan for headache. In February of 2020, Dr. Burns noted a BMI of 46.55 and addressed a weight gain of 20 pounds noting obesity. His notes show propranolol was working for tremor and the claimant's pain was "much improved" on meloxicam. He was taking Effexor and lamotrigine for mental symptoms. Weight was discussed in relation to physical condition and he was referred to a health coach for weight toss [sic], bariatric surgery and lifestyle changes were discussed.

By November of 2020, the claimant's headaches were increasing in severity and frequency. However, notes show sumatriptan was effective and claimant's physical and mental exams were normal. Medications including Lamotrigine, propranolol, Meloxicam, Lamictal were regularly renewed and he was referred to neurology.

(Tr. 24).

The ALJ later addressed Burns' opinion:

Dr. Samuel Burns completed a physical functional assessments in February of 2020 and February of 2021. He thought the claimant was unable to engage in even part time work. He thought the claimant could work at less than a sedentary level and would need breaks every 15 minutes if standing/walking and hourly breaks when sitting. He had limited use of the bilateral upper and lower extremities and weakness and join pain from osteoarthritis. He thought the claimant could engage in postural activity less than 1/3 of the workday, had limited use of his hands and fingers with reduced grip strength and could not reach in any direction for 2/3 of the workday. These assessments are largely unpersuasive as they are not supported by nor consistent with medical

imaging and exam findings by other providers in the hearing level record. There is evidence of joint pain, however the record shows it is not as severe as this provider states. Furthermore, there are multiple references to the effectiveness of medication in treating the claimant's condition.

(Tr. 28).

*Burns' Treatment and Opinion*

As noted by the ALJ, Burns began treatment of Dvorak in August 2019. Dvorak returned to Burns in September 2019 and January 2020. When seen in February 2020 Burns recorded "This is an extended visit for the purpose of generating a care plan for the following chronic problems." (Tr. 1702). Sixteen chronic problems were listed, including essential tremors, unsteady gait, cluster headaches, risk for suicide, severe depression, and severe anxiety. Burns recorded "impressions and recommendations" for Dvorak's various ailments. The hip pain was improved, and pain "much improved lately," although Dvorak was noted to be using a walker. (Tr. 1706). Similarly, the unsteady gait was improved and Dvorak was "using walker currently." (Tr. 1706). Also, the essential tremors were improved with propranolol. Burns rated Dvorak's risk for suicide as improved, the chronic depression, severe anxiety, and cluster headaches as unchanged, noting he continued to have recent headaches.

Burns co-authored a medical source statement on February 17, 2020, the same

6

day of Dvorak's "extended visit."  Physical therapist Joe Bridges ("Bridges") joined with Burns in opining to the following: Dvorak could frequently lift/carry less than 10 pounds, occasionally lift/carry less than 10 pounds, stand/walk 2 hours a day, continuously stand/walk for 15 minutes, sit for 6 hours, continuously for 1 hour, had limitations in his ability to push/pull in upper and lower extremities, would need to take breaks at will, could perform work activities for 1 hour, continuously for 15 minutes, could climb, balance, squat, kneel, crouch, bend, or stoop for less than 1/3 of the work day, could reach and feel for 2/3 of the work day, could handle, finger, and grip for 1/3 to 2/3 of the work day, should avoid all exposure to extreme cold, heat, and hazards, and should avoid concentrated exposure to wetness, humidity, fumes, odors, dusts, gases, and poor ventilation.  Burns offered his RFC assessment, finding Dvorak could not sit for 6 hours, could not sit/stand/walk for 8 hours, could not perform part-time work for more than 10 hours a week, would require 4 or more unscheduled work breaks a day, has significant limitation in the ability to reach/push/pull in the upper extremities, and has significant limitations in the ability to handle and work with small objects with both hands.  Burns also executed a Physical Exertions Limitations Form, opining Dvorak could perform part time only or no substantial work, defined as less than 10 hours a week, regardless of work restrictions.  (Tr. 1519-1523).

*The Erroneous Evaluation of Burns' Opinion*

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017. Dvorak filed his claim on June 21, 2017. The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021). The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
>
> The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the

supportability and consistency of a medical opinion.[3]   For the following reasons, the ALJ's analysis of the report of Burns (with the assistance of Bridges), quoted above, falls short of what is required.

First, the ALJ incorrectly identifies *two* opinions from Burns, one in February 2020 and one in February 2021.  The record reflects Burns' opinion from February 2020 is the only medical source statement offered.  Some confusion is understandable, as the transcript provided the Court contains three copies of the same document.  *See* Exhibits 36F, 37F, and 41F.  And one of the pages in this report is mis-dated as February 17, 2021, rather than February 21, 2020, when all of the other pages were executed.  *See* Transcript pages 1523, 1524, & 1663.  The failure to discern the number of reports authored by Burns detracts from the ALJ's credibility in analyzing the reports.

Second, the ALJ largely neglects any analysis of the supportability of Burns' opinion.  While the ALJ includes the word "supported" in his evaluation, he does not fully consider Burns' own records and explain how they fail to support his opinion.

---

[3]

In *Morton v. Saul*, 2021 WL 307552, 7 (E.D. Mo. 2021), a district court judge observed with respect to the supportability factor, "an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion."  With respect to the consistency factor, he noted that "[s]tated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as whole."  *See Id.*

For example, the ALJ refers to "multiple references to the effectiveness of medication in treating the claimant's condition." (Tr. 28). However, this sentence leaves unanswered many questions. Dvorak was diagnosed by Burns with sixteen impairments. The efficacy of medication in treating one or more of these impairments would not explain the overall rejection of Burns' report. While Burns noted improvement in hip pain and unsteady gait, the ALJ goes too far in citing general effectiveness of medication when Burns also twice notes in the same opinion that Dvorak uses a walker. This is significant when the gap between the ALJ's exertional level (medium) is so much greater than that found by Burns (less than sedentary). The ALJ failed to adequately explain how Burns' opinion was not supported by his examination records.

Third, Burns opined that Dvorak suffered from "severe anxiety with panic features." (Tr. 1521). This opinion was consistent with treatment records showing his chronic depression and severe anxiety was unchanged in February 2020. The ALJ did not address this opinion.

Finally, the ALJ found Burns' opinion largely unpersuasive because it was not consistent with exam findings by other providers. However, the ALJ did not cite which exam findings and which providers contradicted Burns' opinion. A review of the ALJ's thorough recitation of medical treatment shows a great deal of treatment

during the relevant period, with many providers citing a longstanding psychiatric history.  Some providers suggested Dvorak's physical problems had no underlying neurologic pathology.   Other providers placed restrictions on Dvorak, such as neurologist Ikram Khan's November 2018 prohibition from driving for the next year. Physician's assistant Alicia Leverette observed in December 2018 that Dvorak may "eventually return to work, maybe starting out at part time," and RN Deborah Palludan noted his use of a cane at the same time.  (Tr. 1207, 1266).  Diagnoses of depression, anxiety, headaches, and tremors were consistent throughout the relevant period.   In summary, the ALJ is tasked with evaluating, at a minimum, the supportability and consistency of the opinion.  General comments do not provide a sufficient explanation for the claimant, or the Court, to understand specifically why the opinion of Burns was "largely unpersuasive."  (Tr. 28).

As Magistrate Judge Deere observed in *Phillips v. Saul*, the new articulation requirements are designed to provide individuals with a better understanding of the Commissioner's determinations and provide sufficient rationale for a reviewing adjudicator or court.  This purpose is frustrated when the ALJ fails to explain, with some specificity, why the opinion of treating physician Burns was not supported by relevant objective medical evidence and explanatory rationale, and precisely why the

opinion was or was not consistent with the medical evidence as a whole.[4]

*Conclusion*

Based on the foregoing, a remand is necessary for reconsideration of Burns' opinion utilizing the appropriate regulations.  If the ALJ finds Burns' opinion unpersuasive, the ALJ shall explain why, fully addressing the supportability and consistency factors, as well as any other relevant factors.

The Court recommends that Commissioner's final decision be reversed and remanded.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 30th day of August, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] The state agency physicians were not unanimous in their opinions of Dvorak's abilities. Opinions rendered earlier in the relevant period rated him as capable of performing medium work. *See*, e.g., report of Dr. Jonathan Norcross from March 2019. (Tr. 125-128).  The most recent state agency physicians, however, found Dvorak capable of only light work.  Given his age, this would render him disabled under the relevant regulations.  *See* April and May 2019 reports of Dr. Priscilla Manni-Kahn and Dr. Arvind Chopra.  (Tr. 1281-1284, 1286-1293).